JOHN McKELWAY et al. *v.* THE NEW ENGLAND MANU-
FACTURING CO., of South Trenton, and others.

1. Where the funds in the hands of receivers for distribution among the
creditors of a company, after paying prior encumbrances, amounted to
much more than sufficient to satisfy the claims of the complainants, and it
appeared by the bill that there was a fund in court raised out of the prop-
erty of the mortgagors, by a decree of this court, for the very purpose of
paying, with other debts of the company, those due to the complainants, it
was held to be inequitable to permit the complainants to enforce their
claims against other lands; sufficient lands of the mortgagors having
already been sold, under a decree of the court, to satisfy their mortgages.

2. Where two creditors have liens, the one on two funds of a debtor, and
the other on one of them only, the creditor having the lien on the two will,
in equity, not be permitted to invade the common fund until he has ex-
hausted the other.  But this principle is not applicable where mortgagees
object to the payment of a prior mortgage out of a common fund, raised in
part by the sale of the mortgaged premises, there being no allegation in
the bill that the property sold did not bring enough to pay off the first
mortgage.  If it did, then the money taken out of the common fund to pay
the first mortgage, will, in equity, be taken as *that portion* of the fund real-
ized from the sale of the mortgaged premises.

---

The bill alleges that on the 28th March, 1833, the Tren-
ton Delaware Falls Co. purchased of S. R. Hamilton and
wife, and John McKelway and wife, about 17 acres of land,
in the township of N., in the county of B., at the time sub-
ject to a mortgage by Peter A. Hargous to N. Belleville,
dated 27th Nov., 1835, to secure $3000, and which mortgage
was subsequently assigned to Robert McCall.

That the said company, on or about the 20th day of Jan-
uary, 1837, became seized, by purchase, of other tracts of
land ; one tract on the route of the branch raceway, in the
township of N. aforesaid, one other tract being the raceway
in the counties of Hunterdon and Burlington.

That the said company being indebted to the Trenton
Banking Company, about 2d April, 1833, mortgaged to the
bank all its real estate in the counties of Hunterdon and
Burlington, to secure the sum of $4000 ; and about same

time made a second mortgage to the said bank on all their said real estate, to secure the further sum of $6700.

That after the execution of the said mortgages, to wit, on the 20th March, 1840, the Falls company purchased of Budd Sterling and wife, for $300, one acre in the said township of N.

That on the 1st day of January, 1841, the said Falls company purchased of Peter T. Smith, for $1312.88, three tracts of land situate in the county of Mercer.

That the receivers appointed by this court, under the decree of Nov. 7th, 1843, sold all the premises of the said Falls company for $50,000, and the proceeds have been appropriated by them to the payment of the Hargous mortgage, and the Trenton Banking Company's mortgage and judgment.

That about the 22d May, 1834, the Trenton Banking Company recovered judgment against the Falls company for $5237.87, and levied on lands purchased of T. B. Sartori, and also one of the lots purchased of P. T. Smith, and on all the real estate of the Falls company, without describing it; and that the said levy included the lot of land afterwards released and conveyed by the Falls company to Brown, Hansen and Benson, and that the same are subject to the Hargous mortgage and the bank judgment.

That the said Falls company having become embarrassed, a bill was filed by one Andrew Carrigan, on 29th May, 1843, and on the 9th June of the same year, receivers were appointed.

That on the 20th day of February, 1844, the receivers sold all the real estate and property of the said Falls company, under an order of the court, and which sale was afterwards ratified, and by the report of the master, there remained in the hands of the receivers, after deducting their disbursements and commissions, $49,751.82.

That the receivers reported to the court that they had proceeded to ascertain the amount and priority of the several mortgage and judgment debts, and that Schedule A, annexed to said report, contained a statement of the several claims which had been presented to them ; and that Schedule B contained a statement of the order and priority of the mortgage and judgment debts, &c.

That, in said Schedule B, the Hargous mortgage is stated as first entitled to priority of payment, and the two mortgages, and a judgment to the Trenton Bank next entitled to priority.

That, by a decree of the court, the receivers paid out of the said funds in their hands, the mortgage and judgment debts due the bank, and also the Hargous mortgage.

That, in 1839, while the Hargous and bank mortgages and bank judgment were liens unpaid, the Falls company made an indenture of sale or release to David S. Brown, William R. Hansen, and John C. Benson, of a mill site, being part of the 17 acres before mentioned, and covered by the Hargous mortgage.

That the consideration in the deed is $1666.66, and yet no part of the same was ever paid by the said grantees, or in any way secured to be paid; and that the said Brown, Hansen and Benson had notice, actual or constructive, of the said encumbrances at the time of the conveyance to them.

That, on the 14th of January, 1843, the Falls company sold and conveyed part of the 17-acre tract to Xenophon J. Maynard, and while it was subject to the said mortgage and judgment liens.

That, about the 3d of February, 1843, and before the said mortgages and judgment were paid off as aforesaid, the said Falls company conveyed a mill-site, part of the said 17 acres, to Thos. J. Stryker.

That the said land so conveyed to Brown, Hansen and Benson, to Maynard, and to Stryker, ought to have been made to contribute its proportion toward the payment of the said mortgages and judgment; and yet the same were paid out of the general fund in the hands of the receivers.

That, although the said mortgages and judgment have been paid, the same are still uncanceled of record.

That, in 1841, Benson conveyed his interest in the said tract to Brown and Hansen, and they conveyed to the New England Manufacturing Company.

That, the said Falls company being justly indebted to the

complainants and other persons, on the 2d day of June, 1836, executed to their said creditors a mortgage upon all the lands and tenements which had been purchased or appropriated by the said Falls company, by virtue and in pursuance of their act of incorporation, and not theretofore conveyed by them to other persons, situate in the townships of Ewing and Trenton, in the county of Hunterdon, and in the township of Nottingham, in the county of Burlington, and which mortgage was executed to secure to the individuals therein mentioned the respective sums therein named, making, in all, the sum of $9220.97.

That, on the 4th of June, 1836, the said company executed another mortgage, on the same premises, to Armitage, Green, and others, to secure the several sums therein mentioned, and to the individuals therein named, making, in all, the sum of $7395.45.

That the funds with which the receivers paid the Hargous and bank mortgages and judgment, were raised and made from the proceeds of the sale of the real estate of the said Falls company, on which the complainants' mortgages were encumbrances.

That the said Hargous mortgage and the bank mortgage and judgment being liens, as well on the property sold to Brown, Hansen & Benson, to Maynard, and to Stryker, as well as on the real estate mortgaged to the complainants, ought to have called upon the owners of those respective lots to contribute their ratable proportion. But that these mortgages and judgments having been paid out of funds, the proceeds of sales of land on which the complainants' mortgage was a lien, and thus depriving the complainants of the benefit of their encumbrance and lien, the complainants ought to be permitted to stand in the place and stead of these mortgagees for the amount or proportion to which the said lots so sold Brown, Hansen & Benson, Maynard and Stryker, would have been liable to contribute towards the payment of the said mortgages and judgment, in case the said mortgagees had proceeded to compel the said mortgaged land to bear its ratable portion.

The bill further charges that the said premises conveyed to Brown, Hansen & Benson, Maynard and Stryker, are situated in the county of Burlington, and that although the mortgages of complainants purport to embrace all the real estate of the Falls company, as well in the county of Burlington as in the county of Hunterdon, yet the same were recorded only in the county of Hunterdon, by reason whereof the said mortgages were not liens or encumbrances on the land conveyed to Brown, Hansen & Benson, Maynard and Stryker, which were situated in the county of Hunterdon. But, as to this allegation, the bill was amended, and it is charged in the amended bill, that Brown, Hansen & Benson, Maynard and Stryker, at the time of the respective conveyances to them, had notice of the mortgages held by complainants.

The prayer of the bill is, that the complainants may be decreed to stand in the place and stead of Robert McCall, who held the Hargous mortgage at the time it was paid off, and of the Trenton Banking Company, and may be entitled to receive of and from the New England Manufacturing Company, (grantees of Brown, Hansen & Benson), Xenophon J. Maynard and John Sheppard, (grantees of Thomas J. Stryker), respectively, each a proportionate sum of money as the said Robert McCall and the Trenton Banking Company might have received in case they had proceeded to enforce their liens and encumbrance against the said lots of land so conveyed by the Trenton Delaware Falls Company to the said Maynard, Sheppard and Brown, Hansen & Benson, and that the said The New England Manufacturing Company, Maynard & Sheppard, may be decreed to pay to the complainants, respectively, such an amount of money as the said lands so conveyed are now worth, or as they were worth, at the time of the said conveyance, or such other sum proportioned to the whole value of the property of the said " The Trenton Delaware Falls Company," out of which the said McCall and the bank received the principal and interest of their said mortgages and judgment, as shall be agreeable to equity. And that the complainants may be permitted, if

necessary, to use the name of the said McCall and his mortgage, and also the name of the said bank and their mortgage and judgment, for the purpose of enforcing them as liens.

This was an amended bill. To the original bill a general demurrer had been filed, which was sustained. The bill was then amended, according to some suggestions made by the Chancellor in his opinion, but without any intimation by him that the bill, if amended, could be sustained.

To the amended bill a general demurrer was filed on behalf of Sheppard, one of the defendants, and another on behalf of the "New England Manufacturing Company."

*C. S. Green* and *W. L. Dayton* argued in support of the demurrer.

*W. Halsted, contra.*

THE CHANCELLOR. The Hargous mortgage covers seventeen acres of land, in the county of Burlington. It was made to secure $3000, and is dated the 27th November, 1835.

The bank mortgage is next in priority. It embraces the seventeen-acre tract, and all the real estate of the Falls company, both in the counties of Burlington and Hunterdon.

Next is the bank judgment. The mortgage and judgment together were for the sum of $11,938.87.

Then come the two mortgages of the complainants—one for the sum of $9220.92, the other for $7395.45. These mortgages embraced all the lands of the Falls company in Hunterdon and Burlington counties, which had been purchased and appropriated by the company, by virtue of their act of incorporation.

It does not appear by the bill that there were any other encumbrances on the real estate of the Falls company, nor that the company owed any debts, except those thus secured by these liens.

The funds in the hands of the receivers, for distribution among the creditors of the company, amounted to $49,751.82.

The receivers paid out of this sum $24,091.89 in liquidation of the Hargous mortgage and the bank mortgage and judgment. This left a balance in their hands of $25,659.95—an amount much more than sufficient to satisfy the claims of the complainants. It thus appears by the bill that there is a fund in court, raised out of the property of the mortgagors by a decree of this court, for the very purpose of paying, with other debts of the company, those due to these complainants. Why, then, should the complainants have the relief they now ask? Why should the court grant them aid, to enforce their liens against property in the hands of the grantees of this company, when sufficient money has already been raised to satisfy the complainants' debt. There is no account given in the bill as to the disposition of the balance of the fund. The bill alleges that the court decreed the priority of the Hargous mortgage, and the bank mortgage and judgment, and ordered them paid, and that they were accordingly satisfied by the receivers. Why the complainants were not paid out of the fund does not appear. If the bill be true, they are entitled to payment, and the fund is on hand for the purpose.

It may be that the fund has been otherwise distributed. But in deciding the cause, as it is before me on a general demurrer to the bill, I must take the case as the complainants have made it. The facts as stated are to be considered as true, and no extrinsic circumstances of explanation can be considered, either on behalf of the complainants or defendants. In this view, the complainants themselves show that it would be inequitable to permit them to enforce their claims against other lands, when sufficient land of the mortgagors have already been sold, under a decree of this court, to satisfy their mortgages.

But there are other difficulties, apparent by the bill, to prevent the complainants obtaining the relief they seek.

All the mortgages in question cover the seventeen-acre tract in the county of Burlington. Subsequent to the execution of these mortgages, the New England Manufacturing Company, by several mesne conveyances under the Falls

company, became seized of a small portion of this tract, Xenophon J. Maynard of another small portion, and John Sheppard of another. The fund in the hands of the receivers was made out of that portion of the seventeen acres not conveyed to these grantees, and out of other real estate of the company in Burlington and Hunterdon counties, covered by the bank's and complainants' mortgages, but not covered by the Hargous mortgage. This fund having been raised in part out of property, which the complainants' mortgage did embrace, and the Hargous mortgage did not, the complainants insist an equity attaches in their favor to enforce the Hargous mortgage against the land held by "The New England Manufacturing Company," Sheppard and Maynard.

It is true the principle is, as the complainants insist, that where two creditors having liens, the one on two funds of a debtor and the other on one of them only, the creditor having the lien on the two will, in equity, not be permitted to invade the common fund until he has exhausted the other. It is the application of this principle that the complainants seek by their bill to enforce; and unless it can, in some way, be made applicable to the case, this suit cannot be maintained.

How is it applicable, as between the complainants and the Hargous mortgage? The complainants insist the Hargous mortgage was paid out of a fund which belonged to them, and which was the proceeds of land in the county of Hunterdon. But how does this appear? The Hargous mortgage had the first lien on the fund which was realized from the sale of that part of the seventeen acres sold by the receivers. There is no allegation in the bill that the portion of the seventeen acres so sold did not bring enough to pay off this mortgage. If it did, then the money taken out of the common fund to pay this mortgage will, in equity, be taken as that portion of the fund realized from the seventeen acres. To obviate this difficulty, the complainants amended their bill. But the amended bill is as deficient in this particular as the original bill. By their

amendment, the complainants allege, "that the residue of the land belonging to the said 'The Trenton Delaware Falls Company,' in the county of Burlington, after the sale and release of the said lots so sold to the said David S. Brown, William R. Hansen, and John C. Benson, and Xenophon J. Maynard, &c., were not sufficient to pay and satisfy the said mortgage to the said Peter A. Hargous and the said two mortgages to the said 'The Trenton Banking Company,' with the interest due thereon at the time of the sale and release of the said lots respectively." But the question is not whether, at the time of the sale and release of those respective lots by "The Trenton Delaware Falls Company," the residue of the company's land in the county of Burlington was of sufficient value to satisfy the Hargous and bank mortgages; but was the portion of the seventeen acres sold by the receivers, of sufficient value, or did they raise out of it enough to pay the Hargous mortgage? Unless the complainants show the negative of this inquiry on the face of their bill, they have no equity.

As to the equities existing between the bank mortgages and the mortgages of the complainants. These mortgages all covered the same property. The bank mortgages were entitled to priority of payment, out of the funds in the receivers' hands. They have been paid, without resorting to the lands conveyed to "The New England Manufacturing Company," Maynard and Stryker. The complainants ask that they may enforce the bank's mortgages for their benefit against the lands held by these grantees, or that their equities may, in some way, be established, upon the ground that as between the bank mortgages and their own, the former should have been first satisfied out of these lands. But why? All the complainants now ask is that they may have the benefit of these lands to satisfy their mortgages. Why is "The Trenton Banking Company" brought into court for that purpose? The complainants' mortgages cover this land, as well as the bank mortgages; and if the land is liable at all for the complainants' debts, it must be appropriated for the purpose, by enforcing their own mortgages. It is no

ground of complaint against the bank, that it has left a fund untouched, upon which the complainants, as well as they, had liens in common. This was to the complainants' benefit. By their original bill, the complainants placed themselves upon this equity; they alleged that their mortgages were not liens on the land in the hands of the grantees of the Falls company, because the mortgages had not been recorded in the county of Burlington, where the lands were located. With regard to their mortgages, therefore, they insisted that, with the bank mortgages, they were liens upon the fund in the hands of the receivers, a fund common to both as creditors; but that in addition, the bank mortgages were liens upon the lands held by the grantees before named, and, in equity, these lands ought to have been appropriated to pay the bank mortgages before the common fund was resorted to. But by their amendment to the original bill, the complainants allege that the grantees of " The Trenton Delaware Falls Company " had notice, both actual and constructive, of the complainants' mortgages. How, then, can the complainants claim the equitable interference of this court for their relief, upon the ground that their mortgages were not liens upon the land in question ?

I am aware that all these amendments were made upon the suggestion of the late Chancellor, after he had sustained a general demurrer to the original bill. But these matters are now submitted to my decision, and I must dispose of them according to my best judgment. I do not dissent from the opinion of the late Chancellor, that the original bill was deficient for want of equity. But I do not think any amendments could help it.

The demurrer must be sustained, and the bill dismissed, with costs.